IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PLASSER AMERICAN CORPORATION                                              PLAINTIFF

v.                          No. 3:06CV00095 JLH

THE BURLINGTON NORTHERN AND
SANTE FE RAILWAY COMPANY                                                 DEFENDANTS

**OPINION AND ORDER**

  Plasser American Corporation has brought suit against The Burlington Northern and Santa Fe Railway Company alleging negligence and breach of contract. Plasser originally filed this action in the Circuit Court of Lawrence County, Arkansas. Burlington Northern removed this action to this Court pursuant to 28 U.S.C. § 1441(b), under which "[a]ny civil action of which the district courts have original jurisdiction," whether through federal question or diversity jurisdiction, may be removed. Both parties are corporations organized under the laws of Delaware, so the parties are not diverse. Burlington Northern contends that Plasser's right to relief necessarily depends on resolution of a substantial question of federal law and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, Burlington Northern argues that Plasser's claims are preempted by the Federal Railway Safety Act and its accompanying regulations. The parties have filed cross motions for summary judgment, both of which seek a resolution only on the question of preemption. Because Plasser's negligence claim is preempted, Burlington Northern's motion for summary judgment on that claim is granted. However, Plasser's breach of contract claim is not preempted and is remanded to state court.

I.

On or about December 13, 2002, Plasser and Burlington Northern entered into a contract whereby Plasser would provide ballast undercutting services for railroad tracks with a Ballast Undercutter/Cleaner Model RM 802. Paragraph seven of the contract stated that all loss or damage to Plasser's property would be assumed by Plasser "unless such loss or damage was proximately caused by the fault of Railroad." The contract defined "'fault' of a party [as] the intentional misconduct, gross negligence, or, as between the parties, sole negligence of the party . . . ." According to paragraph five of the contract, Burlington Northern was to be responsible for the transportation of the undercutter to various work sites. On or about January 12, 2005, a ballast undercutter, owned by Plasser and under the control of Burlington Northern, was being transported from one job site to another. It derailed near Ravenden in Lawrence County, Arkansas, causing damage to the undercutter in the process.

II.

State law that conflicts with federal law is preempted under the Supremacy Clause of the Constitution. U.S. CONST., art. VI, cl. 2. Congressional intent to preempt state law may be expressed in statutory language or implied in the structure and purpose of federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407 (1992). "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the states to supplement it.'" *Id.* (quoting *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153, 102 S. Ct. 3014, 3022, 73 L. Ed. 2d 664 (1982)) (citation omitted). "If the statute contains an express pre-emption clause, the task of

statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct 1732, 1737, 123 L. Ed. 2d 387 (1993).

The pertinent portion of the Federal Railroad Safety Act, which contains both an express pre-emption clause and an express savings clause, states:

(a) National uniformity of regulation.--

>(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

>(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

>>(A) is necessary to eliminate or reduce an essentially local safety or security hazard;

>>(B) is not incompatible with a law, regulation, or order of the United States Government; and

>>(C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.--

>(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--

>>(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.
>
> (c) Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106. Under the Federal Railway Safety Act, there is an express congressional command: "[l]egal duties imposed on railroads by the common law" are preempted if the Secretary of Transportation has prescribed a regulation covering the subject matter at issue. *See Easterwood*, 507 U.S. at 664, 113 S. Ct. at 1737-38. "To prevail on [a] claim that the regulations have pre-emptive effect, [a party] must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Id.* at 664, 113 S. Ct. at 1738 (citation omitted). Here, Plasser has alleged that the "derailment was caused by a drop in the rail elevation." (Compl. ¶ 7.) "Thus, the issue before the Court is whether the Secretary of Transportation has issued regulations covering the same subject matter as [Arkansas] negligence law pertaining to" rail elevation. *See Easterwood*, 507 U.S. at 664, 113 S. Ct. at 1738.

Plasser's claim of negligence is pre-empted by 49 C.F.R. § 213.63. Section 213.63 states in pertinent part:

> [On a Class 3 track, t]he deviation from uniform profile on either rail at the mid-ordinate of a 62-foot chord may not be more than . . . 2 ¼ inches. [On a Class 3 track, t]he deviation from zero crosslevel at any point on tangent or reverse crosslevel

> elevation on curves may not be more than . . . 1 ¾ inches. [On a Class 3 track, t]he difference in crosslevel between any two points less than 62 feet apart may not be more than . . . 2 inches.

This regulation "displace[s] state and private decisionmaking authority by establishing a federal-law requirement that" rail elevation be contained within certain prescribed limits. *See Easterwood*, 507 U.S. at 670, 113 S. Ct. at 1741. "Indeed, [section 213.63] effectively set the terms under which railroads are to" manage track elevation. *See id.* In addition to the Supreme Court, the Ninth Circuit Court of Appeals has also stated, "For purposes of . . . the FRSA, a state regulation 'covers the same subject matter' as an FRA regulation if it addresses the same safety concerns as the FRA regulation." *Burlington N. R.R. Co. v. Montana*, 880 F.2d 1104, 1105 (9th Cir. 1989). Here, the Federal Railroad Administration has determined the standards for proper rail elevation and the extent to which rails can rise or drop. 49 C.F.R. § 213.63. This regulation "covers the same subject matter" at issue in Plasser's claim that Burlington Northern negligently allowed a drop in rail elevation. Because "the Secretary of Transportation . . . [has] prescribe[d] a regulation . . . covering the subject matter of the State requirement," Plasser's negligence claim is preempted.

With regard to Plasser's claim for breach of contract, Burlington Northern argues that the "complete pre-emption banner" should apply. "The doctrine of 'complete preemption' establishes more than a defense to a state-law claim. On occasion the Supreme Court has concluded that 'the pre-emptive force of a statute is so 'extraordinary' that it 'converts' an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Chapman v. Lab One*, 390 F.3d 620, 625 (8th Cir. 2004) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct 2425, 2430, 96 L. Ed. 2d 318 (1987)). The Supreme Court has generally limited those "occasions" to areas of the law such as the Labor Management Relations Act or the

Employee Retirement Security Act of 1974, areas where "Congress intended for the federal courts to fashion a body of 'federal common law' that would govern disputes arising under the federal statutes.'" *Id.* at 629.

When it comes to an area traditionally governed by state law, such as contract law, a court interpreting a federal statute will be reluctant to find pre-emption "[i]n the interest of avoiding unintended encroachment on the authority of the States . . . ." *Easterwood*, 507 U.S. at 663-64, 113 S. Ct. at 1737. In such a situation, "pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *Id.* at 664, 113 S. Ct. at 1737 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947)). In the Federal Railroad Safety Act, Congress expressly saved certain state-law causes of action in its preemption provision. *See* 49 U.S.C. § 20106(b). "That solicitude for state law, together with the 'presumption against pre-emption' in an area traditionally governed by state law counsels hesitation before [the Court] conclude[s] that a subject matter governed by state law is substantially subsumed by federal regulations." *Chapman*, 390 F.3d at 627 (citation omitted). Furthermore, "an express preemption clause gives rise to an inference that implied preemption is foreclosed." *Id.* (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-89, 115 S. Ct. 1483, 1488, 131 L. Ed. 2d 385 (1995)).

Here, Burlington Northern attempts to avoid its own self-imposed obligation. Unlike the disputes arising under the federal law of the LMRA or ERISA, there is no indication that Congress intended to preempt contract disputes between sophisticated business entities. Plasser cites *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995), which, while not squarely on point is nonetheless analogous. There, American Airlines, although governed by the Airline Deregulation Act, entered into separate private agreements with customers,

agreements that the Supreme Court held were not preempted and were governed by state contract law.  The Court stated that "terms and conditions airlines offer and passengers accept are privately ordered obligations 'and thus do not amount to a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' . . . ."  *Id.* at 228-29, 115 S. Ct. at 824.  Additionally,

> The ADA's preemption clause . . ., read together with the [Federal Aviation Act's] saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated.  This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232-33, 115 S. Ct at 826.

While some "[l]egal duties imposed on railroads by the common law fall within the scope of" the FRSA's preemption umbrella, the specific legal duty at issue in the breach of contract claim was not imposed by the common law as tort claims are; rather, it was a legal duty voluntarily assumed by Burlington Northern in exchange for consideration sufficient in Burlington Northern's eyes to justify assuming that obligation.  The State of Arkansas enacted no law attempting to regulate the safety or security of Burlington Northern's railroads.  The Federal Railroad Safety Act prevents the State of Arkansas from enacting such laws but not from affording relief to a party who claims and may prove that Burlington Northern dishonored a contract to which it voluntarily agreed.  Burlington Northern argues that Plasser's breach of contract claim is a masked tort claim because in order for Burlington Northern to be at fault under the contract, it must be found to be negligent.  This argument is unavailing.  In this context, whether or not Burlington Northern was negligent is

7

not a claim in and of itself. Rather, if Burlington Northern acted in a particularly negligent manner, that would constitute one element of Plasser's contract claim, specifically whether or not Burlington Northern breached the agreement.

In effect, Burlington Northern's summary judgment motion on this claim is asking the Court to intercede and provide it with immunity from a risk it voluntarily and for sufficient consideration agreed to assume. If the Court applied the doctrine of complete preemption, a provision of the contract for which Plasser bargained and to which Burlington Northern agreed would essentially be meaningless. To deprive Plasser an opportunity for redress for which it bargained in a lawful manner would be wholly unjust and would be unwarranted by any legal principle. It is worth noting that the Eighth Circuit has stated that "the absence of an alternative cause of action militates against a finding of complete preemption." *Chapman*, 390 F.3d at 629. In light of the presumption against preemption in an area traditionally governed by state law, the clause contained in the Federal Railroad Safety Act saving state claims, the lack of clear and manifest Congressional intent to preempt contract disputes involving railroads, and the absence of any value of law authorizing the Court to strike a provision from a lawfully agreed upon contract, the Court concludes that Plasser's breach of contract claim is not preempted by federal law.

Because the Court has jurisdiction over Plasser's preempted negligence claim, the Court has the authority to exercise supplemental jurisdiction over Plasser's remaining state-law claim for breach of contract. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ."). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Here, Plasser's breach of contract claim is based on state law; the predominant defenses are based on state law; and all of the claims that arose under the Constitution and laws of the United States have been dismissed. What remains is a claim for monetary damages under Arkansas law. Out of respect for the principles of federalism and for the courts of the State of Arkansas, this Court will exercise its discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction with respect to Plasser's state-law breach of contract claim. *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Chapman*, 390 F.3d at 630 (concluding that where complete preemption does not apply to a state-law claim in a FRSA setting, the "action should not be removed to federal court based on the existence of federal question jurisdiction"); *Condor Corp v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that, after dismissing the federal claims, the district court should have exercised its discretion to decline pendent jurisdiction because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions") *see also* 49 U.S.C. § 20106(c) ("Nothing in [the FRSA preemption clause] creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action."). Therefore, Plasser's claim for breach of contract is remanded to the Circuit Court of Lawrence County, Arkansas.

## CONCLUSION

Burlington Northern is entitled to summary judgment on Plasser's negligence claim because it is preempted by 49 U.S.C. § 20101 et seq. and Federal Railroad Administration regulations. However, Plasser's breach of contract claim is not preempted. The Court declines to extend supplemental jurisdiction over the breach of contract claim and hereby remands that claim to the Circuit Court of Lawrence County, Arkansas.

IT IS SO ORDERED this 14th day of December, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE